## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETS

| | |
|---|---|
| DREW WEAVER, Individually And On Behalf Of All Others Similarly Situated, | |
| Plaintiff, | C.A. No. 10-10394-NMG |
| vs. | |
| NOVELOS THERAPEUTICS, INC., and HARRY S. PALMIN, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BORIS URMAN AND RAMONA MCDONALD TO BE APPOINTED AS LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF LEAD AND LIAISON COUNSEL

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action lawsuit (the "Action") brought on behalf of purchasers of the common stock of Novelos Therapeutics, Inc. ("Novelos" or "the Company"), who purchased or otherwise acquired the Company's common stock between December 14, 2009 and February 24, 2010, inclusive (the "Class Period").  Plaintiff in the Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated under Section 10(b), against defendants Novelos and Harry S. Palmin ("Palmin").

Class members Boris Urman and Ramona McDonald (collectively, "Movants") hereby move this Court, pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), for an order (a) appointing Movants as lead plaintiffs in the Action; and (b) approving Movants' selection of Rigrodsky & Long, P.A. and the Egleston Law Firm as co-lead counsel, and Gilman and Pastor, LLP as liaison counsel, for the Class.

The Movants suffered a huge loss resulting from their Novelos investments – over $395,000 – and believe that they have the largest financial interest in the Action.[1]

## STATEMENT OF FACTS

Novelos is a biopharmaceutical company commercializing oxidized glutathione-based compounds for the treatment of cancer and hepatitis.  The Company's most advanced drug development candidate is NOV-002.  NOV-002 is a small molecule compound based on a proprietary formulation of oxidized glutathione that acts together

---

[1] Mr. Urman sustained losses of $253,987.46, and Ms. McDonald sustained losses of $141,071.48, from their Class Period purchases of the Company's common stock.  *See* Declaration of Timothy J. MacFall, dated May 3, 2010 ("MacFall Decl."), Exs. C and F.

with chemotherapy as a chemopotentiator and a chemoprotectant by regulating redox-sensitive cell signaling pathways.  At the start of the Class Period, NOV-002 was in Phase 3 development for treatment of lung cancer under a Food and Drug Administration ("FDA") Special Protocol Assessment ("SPA") and Fast Track.  NOV-002 is also in Phase 2 development for treatment of early-stage breast cancer and chemotherapy-resistant ovarian cancer.¶ 2.[2]

During the Class Period, Defendants issued, or caused to be issued, false and misleading statements in order to artificially inflate the value of Novelos stock, in violation of the Securities Exchange Act of 1934 (the "Exchange Act").  Specifically, Defendants issued statements that, among other things, indicated that the NOV-002 Phase 3 trial had gone on longer than the Company thought it would because patients were living longer than had been expected, indicating that the NOV-002 Phase 3 trial was more successful than the Company had believed it would be. ¶¶ 7; 29-30.  As a result of Defendants' materially false and misleading statements, Novelos stock traded at artificially inflated prices during the Class Period, reaching as high as $2.94 in January 2010. ¶ 39.

On February 24, 2005, the Company issued a press release reporting that the primary endpoint of improvement in overall survival was not met in the NOV-002 Phase 3 trial, and that the unanticipated survival times in the Phase 3 trial did not relate to the patients treated with NOV-002, but instead were experienced by patients in the control arm who did not receive that drug.  ¶ 35.  Following that announcement, the price of the Company's stock declined more than 80%, from a close of $1.65 per share on February

---

[2] Citations to "¶___," are to paragraphs of the Class Action Complaint filed by Plaintiff Drew Weaver on March 5, 2010.

23, 2010, prior to announcement of the results of the NOV-002 Phase 3 trial, to a close of $0.32 per share on February 24, 2010, after announcement of the Phase 3 trial results, on unusually heavy trading volume.  ¶ 38.

## ARGUMENT

**I.     THE COURT SHOULD APPOINT MOVANTS AS LEAD PLAINTIFFS**

### A.     The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  Sections 21D(a)(1) and 21D(a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within twenty (20) days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff.  Section 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i).  The PSLRA requires the court to consider within ninety (90) days all motions, filed within sixty (60) days after publication of that notice, made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Sections 21D(a)(3)(A)(i)(II) and 21D(a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)     has either filed the complaint or made a motion in response to a notice;

(bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of
Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may be

rebutted only upon proof by a class member that the presumptively most adequate

plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to

unique defenses that render such plaintiff incapable of adequately representing the class."

Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movants satisfy the foregoing criteria and are not aware of

any unique defenses that Defendants could raise against them.  Therefore, Movants are

entitled to the presumption that they are the most adequate plaintiffs to represent the

Class and, as a result, should be appointed lead plaintiffs in the Action.

### 1.    Movants Are Willing To Serve As Class Representatives

On March 5, 2010, counsel in the Action caused a notice (the "Notice") to be

published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class

action had been filed against Defendants Novelos and Palmin, and which advised

putative class members that they had sixty (60) days, or until May 4, 2010, to file a

motion to seek appointment as a lead plaintiff in the action.  *See* MacFall Decl., Ex. G.

Pursuant to that Notice, Movant Urman contacted the Egleston Law Firm, one of the

counsel in the Action, indicated that he had sustained substantial financial losses from his

transactions in Novelos common stock and, therefore, wished to move for appointment as

lead plaintiff.  Also, pursuant to that Notice, Ramona McDonald and Lawrence

McDonald contacted Rigrodsky & Long, P.A., one of the counsel in the Action, indicated

that Ms. McDonald had sustained substantial losses from her transactions in Novelos

common stock and, therefore, wished to move for appointment as lead plaintiff. *Id.*, Exs. A, ¶ 2; D, ¶ 2.

Prior to filing this motion pursuant to the Notice, Movants Urman and McDonald and counsel had a conference call to discuss the litigation and strategy if Movants were to be appointed as lead plaintiffs. MacFall Decl., Exs. A ¶ 3; D, ¶ 3. During that call, Movants agreed to work cooperatively and discuss all significant litigation decisions, as well as supervise counsel in a manner that will ensure the vigorous and efficient prosecution of the claims, and promote the best interests of the Class. *Id.* Accordingly, Movants have timely filed this motion and attached their certifications and supporting declarations attesting to their willingness to serve as representative parties of the Class and provide testimony at deposition and trial, if necessary. *See* MacFall Decl. Exs. A, D. Movants, therefore, satisfy the first requirement to serve as lead plaintiff. Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).[3]

---

[3] Courts have routinely appointed small, cohesive groups of investors as lead plaintiffs, even where the members of the group have no pre-litigation relationship. *See In Re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 44 (D. Mass. 2001) (collecting cases); *see also Friedman v. Quest Energy Ptrs. LP*, 261 F.R.D. 607, 614 (W.D. Okla. 2009) (finding "that aggregation of unrelated individuals is acceptable for the purposes of lead plaintiff in private securities litigation"); *Klugman v. American Capital Ltd.*, Civil No. PJM 09-5, 2009 U.S. Dist. LEXIS 71895, at *11 (D. Md. Aug. 13, 2009) (appointing small group of previously unrelated investors); *In Re UBS Auction Rate Sec. Litig.*, 08 Civ. 2967 (LMM), 2008 U.S. Dist. LEXIS 56016, at * (S.D.N.Y. July 16, 2008) (noting that cases prohibiting aggregation of losses are now in the minority and following line of cases that "recognizes that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA.") (citations omitted); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22:2 (4th ed. 2002) ("The text of the PSLRA does not limit the composition of a 'group of persons' to those only with a pre-litigation relationship, nor does the legislative history provide a sound enough foundation to support such a gloss.").

### 2.    Movants Have The Largest Financial Interest

The PSLRA requires the Court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." Section 21D(a)(3)(B)(iii)(I)(bb), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Movants submit that they have the largest financial interest of any shareholder or group of shareholders in the Action.   During the Class Period, Movants suffered combined losses of over $395,000.  *See* MacFall Decl. at Exs. B,C, E, F.  These losses are significant enough to ensure that Movants have a sufficient financial stake to remain active participants in the Action and oversee the vigorous prosecution by counsel.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004).  *See also House Conference Report No. 104-369*, 104th Cong.1st Sess. at 34 (1995) (citing Conference Report of Securities Reform, H.R. Rep. No. 369, 104 Cong., 1st Sess. 31, *reprinted in* U.S.C.C.A.N. 679, 730-31).  Movants are not aware of any other moving party who has suffered larger losses.  Accordingly, Movants satisfy the largest financial interest requirement to be appointed as lead plaintiffs in the Action.  Section 21D(a)(3)(B)(iii)(I)(bb), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Movants Satisfy the Requirements of
### Rule 23(a) Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA also states that at the outset of the litigation, the lead plaintiff must also "otherwise satisf[y] . . . the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u 4(a)(3)(B)(iii)(I)(cc).  Only typicality and adequacy are relevant for purposes of a motion for lead plaintiff.  *See, e.g.*,

*Lernout & Hauspie,* 138 F. Supp. 2d at 46; *see also In re Cendant Corp. Litig.*, 264 F.3d at 265; *In re Vicuron Pharms.*, 225 F.R.D. at 511.  As discussed below, Movants satisfy the typicality and adequacy requirements under Rule 23(a) and the PSLRA.

The claims asserted by Movants are typical of those of the Class.  Movants, like the members of the Class, purchased Novelos common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby.  Thus, their claims are typical, if not identical, to those of the other members of the Class because Movants suffered losses similar to those of other Class members and their losses result from Defendants' common course of conduct.  *See In re Waste Mgmt., Inc. Secs. Litig.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000). Accordingly, Movants satisfy the typicality requirement of Rule 23(a)(3).

Movants are also adequate representatives for the Class.  There is no antagonism between their interests and those of the Class.  Moreover, Movants have retained counsel highly experienced in prosecuting securities class actions, and will submit their choice to the Court for approval pursuant to Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v).  *See Waste Mgmt.*, 128 F. Supp. 2d at 414.

Accordingly, at this stage of the proceedings, Movants have made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy Section 21D(a)(3)(B)(iii)(I)(cc), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

## III.   MOVANTS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval.  Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary

"to protect the interests of the class."  Section 21D(a)(3)(B)(iii)(II)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  *See also Lernout & Hauspie,* 138 F. Supp. 2d at 46-47.

Movants have selected and retained the Egleston Law Firm and Rigrodsky & Long, P.A. as proposed co-lead counsel and Gilman and Pastor, LLP as proposed liaison counsel for the Class.   All firms have extensive experience prosecuting complex securities class actions, such as this one, and are well qualified to represent the Class.  *See* MacFall Decl. Exs. H, I, J.  Therefore, the Court may be assured that if it grants this motion, the Class members will receive high-caliber representation by skilled, experienced counsel.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court: (1) appoint Movants as lead plaintiffs for the Class in the Action and all subsequently-filed, related actions; and (2) approve Movants' selection of the Egleston Law Firm and Rigrodsky & Long, P.A. to represent the Class as co-lead counsel, and Gilman and Pastor, LLP as liaison counsel, respectively.

Dated: May 4, 2010                                                   Respectfully submitted,

**GILMAN AND PASTOR, LLP**


By: /s/ David Pastor_____
David Pastor (BBO # 391000)
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: (617) 742-9700
Facsimile: (617) 742-9701
Email: dpastor@gilmanpastor.com

*Proposed Liaison Counsel*

*EGLESTON LAW FIRM*
Gregory M. Egleston
360 Furman Street, Suite 443
Brooklyn, NY 11201
Telephone: (646) 227-1700
Facsimile: (646) 227-1701
Email: egleston@gme-law.com
          greg.egleston@gmail.com


**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
919 North Market Street, Suite 980
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rigrodskylong.com
Email: bdl@rigrodskylong.com

-and-

Timothy J. MacFall
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Telephone: (516) 683-3516
Email: tjm@rigrodskylong.com

*Proposed Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 4, 2010.

/s/ David Pastor_____
David Pastor