**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DREW WEAVER, Individually And On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>NOVELOS THERAPEUTICS, INC., and HARRY S. PALMIN,<br><br>　　　　　　　　　　　Defendants. | Civil Action No. 1:10-CV-10394-NMG |

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE NVLT INVESTOR GROUP TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED <u>LEAD PLAINTIFF'S CHOICE OF COUNSEL</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.......………………………………………………….…… ii

PRELIMINARY STATEMENT……………………………………………………………1

PROCEDURAL BACKGROUND……………………………………………………………2

STATEMENT OF FACTS……………………………………………………………………2

ARGUMENT…………………………………………………………………………………5

I. THE NVLT GROUP SHOULD BE APPOINTED
   LEAD PLAINTIFF…………………………………………………………………5

   A. The Procedural Requirements Pursuant to the PSLRA…………………………..5

   B. The NVLT Group Is "The Most Adequate Plaintiff"………..…………………6

      1. The NVLT Group Has Complied With the
         PSLRA And Should Be Appointed Lead Plaintiff…………………….6

      2. The NVLT Group Has the Largest Financial Interest…………………8

      3. The NVLT Group Satisfies the Requirements of Rule 23……………8

         i. The NVLT Group's Claims are Typical of the Claims
            of All The Class Members……………………………………………….9

         ii. The NVLT Group Will Adequately Represent
             The Class……………………………………………………………10

II. THE COURT SHOULD APPROVE THE NVLT GROUP'S
    CHOICE OF LEAD COUNSEL………………………………………………...11

CONCLUSION……………………………………………………………………..11

i

# TABLE OF AUTHORITIES

## CASES

*In re Baan Co. Sec. Litig.*, 186 F.R.D. 214 (D.D.C. 1999) .................................................. 7

*Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass. 1996) ................................... 5, 7

*In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39 (D. Mass. 2001) ..................... 8, 9

*Newman v. Eagle Building Tech.*, 209 F.R.D. 499 (S.D. Fla. 2002) .................................. 7

*In re Organogenesis Sec. Litig*, 241 F.R.D. 397 (D. Mass. 2007) ................................ 9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) ...................... 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
    No. 02-8264, 2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004) .......................... 5

*Schulman v. Lumenis, Ltd.*, 02-1989, 2003 U.S. Dist. LEXIS 10348 (S.D.N.Y.
    June 18, 2003) .................................................................................................................. 7

*State Univ. Ret. Sys. v. Sonus Networks, Inc.*, No. 06-10040, 2006 U.S. Dist.
    LEXIS 93328 (D. Mass. Dec. 27, 2006) .......................................................................... 9

*In re Tyco Int'l, Ltd. Sec. Litig.*, No. 00-MD-1335, 2000 U.S. Dist. LEXIS 13390
    (D.N.H. Aug. 17, 2000) .................................................................................................... 7

*In re Versata, Inc. Sec. Litig.*, No. 01-1439, 2001 U.S. Dist. LEXIS 24270 (N.D.
    Cal. Aug. 20, 2001) ..................................................................................................... 7, 8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248 (S.D.N.Y. 2003) .......... 9

*Weltz v. Lee*, 199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................... 7

## STATUTES AND RULES

15 U.S.C. §78u-4(a)(3) ............................................................................................. *passim*

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

**PRELIMINARY STATEMENT**

The NVLT Investor Group ("NVLT Group" or "Movant")[1] a small, cohesive group of 3 members, submits this memorandum in support of its motion: (1) to be appointed Lead Plaintiff in this Action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(b) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) for approval of its selection of the law firm of Brower Piven, A Professional Corporation ("Brower Piven"), as Lead Counsel for the Class, and the law firm of Berman DeValerio as Liaison Counsel for the Class.

As described in the Consolidated Schedule of Transactions and Losses for the NVLT Group attached to the Declaration of Yelena Trepetin in Support of the Motion of the NVLT Investor Group to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel ("Trepetin Decl."), at Exhibit B, the NVLT Group has suffered a loss of approximately $99,598.18 as a result of its members' purchases of shares of Novelos Therapeutics, Inc. ("Novelos" or "Company") common stock between December 14, 2009 and February 24, 2010, inclusive (the "Class Period"). To the best of its knowledge, the NVLT Group has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff in this Action.

In addition to demonstrating the largest financial interest in the outcome of this litigation, the Certifications of the NVLT Group evidence their intent to serve as Lead Plaintiff in this litigation, including their cognizance of the duties of serving in that role.[2] The members of the

---

[1] The NVLT Group consists of Stephen B. Sawtelle, Dean G. Lackey, and Matthew J. Parker.

[2] The PSLRA authorizes any member or group of members of the putative Class seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Copies of the NVLT Group's Certifications setting forth

NVLT Group fully understand their duties and responsibilities to the Class, and are willing and able to oversee the vigorous prosecution of this Action.  As provided in the individual Declarations of the members of the NVLT Group, the members have conferred with each other, are aware of their responsibilities for serving as Lead Plaintiff in this Action, and have agreed to coordinate their efforts throughout the course of this litigation.  *See* Trepetin Decl., Exhibit C.  Moreover, the members of the NVLT Group satisfy both the applicable requirements of the PSLRA and Fed. R. Civ. P. 23, and the Group is presumptively the "most adequate plaintiff."

## PROCEDURAL BACKGROUND

*Weaver v. Novelos*, 10-CV-10394-NMG (the "*Weaver* Action") was filed on March 5, 2010 in this Court.  Pursuant to 15 U.S.C. §78u-4(a)(3)A)(i), on March 5, 2010, the first notice that a class action had been initiated against Defendants was published on *Global Newswire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from the notice (May 4, 2010).  *See* Trepetin Decl., Exhibit D.

The NVLT Group is a member of the Class (*see* Trepetin Decl., Exhibit A) and has timely moved within the 60 day period following publication of the May 4, 2010 notice as required for appointment as Lead Plaintiff under the PSLRA.

## STATEMENT OF FACTS[3]

Novelos is a biopharmaceutical company commercializing oxidized glutathione-based compounds for the treatment of cancer and hepatitis.  The Company's most advanced drug development candidate is NOV-002, a small molecule compound based on a proprietary

---

their transactions in the Company's common stock during the Class Period are attached as Exhibit A to the Trepetin Declaration.

[3] This Statement of Facts is taken from the allegations contained in the complaint filed in the *Weaver* Action.

2

formulation of oxidized glutathione that acts together with chemotherapy as a chemopotentiator and a chemoprotectant by regulating redox-sensitive cell signaling pathways.  At the start of the Class Period, NOV-002 was in Phase 3 development for treatment of lung cancer under a Food and Drug Administration ("FDA") Special Protocol Assessment ("SPA") and Fast Track.  NOV-002 is also in Phase 2 development for treatment of early-stage breast cancer and chemotherapy-resistant ovarian cancer.

Before a new drug can be marketed in the United States, it must be approved by the FDA. According to Novelos, three separate Phase 2 trials demonstrated clinical activity and safety of NOV-002 in combination with first-line chemotherapy in non-small cell lung cancer ("NSCLC").  Novelos finalized a SPA for NOV-002 with the FDA in May 2006 for a single pivotal Phase 3 trial in advanced non-small cell lung cancer in combination with first-line chemotherapy, and obtained Fast Track designation in August 2006.  The primary endpoint of the trial is improvement in median overall survival to be measured following the occurrence of 725 events (deaths).  The Company commenced enrollment in Phase 3 in November 2006, and reached its enrollment target of 840 patients in March 2008.  The NOV-002 Phase 3 trial was a randomized, controlled, open-label trial conducted across approximately 100 clinical sites in 12 countries.  NOV-002 was evaluated in combination with first-line paclitaxel and carboplatin chemotherapy versus paclitaxel and carboplatin alone. According to the trial's Statistical Analysis Plan ("SAP"), a total of 725 events (deaths) were required to detect a 25% improvement (12.5 months versus 10 months) in overall median survival.  No interim analysis was performed.  In its annual report for the year ending December 31, 2007, filed on March 24, 2008, Novelos reported that it expected to reach the Pivotal Phase in the trial (725 deaths) in mid-2009.

At the start of the Class Period, defendant Harry S. Palmin ("Palmin"), the President, Chief Executive Officer ("CEO") and director of the Company, stated that the Phase 3 trial had gone on longer than they thought it would because patients were living longer than had been expected, indicating that the NOV-002 Phase 3 trial was more successful than the Company had believed it would be. Shortly thereafter, defendant Palmin was quoted as stating that "[i]f this Phase III trial is positive, this will be revolutionary for the cancer field." Palmin's highly positive statements about the NOV-002 Phase 3 trials caused the price of the Company's stock to increase from $0.78 per share on December 10, 2009 to as high as $2.94 per share on January 4, 2010.

Unbeknownst to the investing public, however, defendant Palmin had no reasonable basis for his highly positive statements. As was subsequently disclosed on February 24, 2010, NOV-002 did not meet its primary endpoint of improvement in overall survival in the Phase 3 trial. Indeed, it was disclosed that the trial's duration was longer than originally anticipated not because of NOV-002's efficacy, but because the patients in the control arm of the trial — who did not receive NOV-002 — lived longer than anticipated. On this news, shares of the Company's stock declined more than 80%, from a close of $1.65 per share on February 23, 2010, prior to announcement of the results of the NOV-002 Phase 3 trial, to a close of $0.32 per share on February 24, 2010, after announcement of the Phase 3 trial results, on unusually heavy trading volume. Plaintiff and the other members of the Class who purchased shares of Novelos common stock at prices artificially inflated by the false and misleading Class Period statements were damaged when the truth was finally revealed.

## ARGUMENT

**I.    THE NVLT GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

    **A.    The Procedural Requirements Pursuant to the PSLRA**

The PSLRA sets forth a strict, detailed procedure for the selection of Lead Plaintiff to oversee a securities class action. *See* 15 U.S.C. §78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed *Weaver* Action published a notice on *Globe Newswire* on March 5, 2010. *See* Trepetin Decl., Exhibit D.[4] This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, which would be May 4, 2010. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this Action. 15 U.S.C. §78u-4(a)(3)(A) and (B).

Next, the PSLRA requires that within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of the Class. 15 U.S.C. §78u-4(a)(3)(B)(i). In making this determination, the statute directs the Court to the following objective criteria:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—

---

[4] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

      (aa)  has either filed the complaint or made a motion in response to a notice…

      (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and

      (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

**B.**    **The NVLT Group Is "the Most Adequate Plaintiff"**

    **1.**    **The NVLT Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

The NVLT Group moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. The plaintiff in the first-filed action published notice on *Globe Newswire*, a national business-oriented wire service, on March 5, 2010. Accordingly, the NVLT Group meets the requirements of 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) as it has filed its motion by May 4, 2010.

Moreover, the NVLT Group has the largest known financial interest in the relief sought from its investments in Novelos common stock. Further, the members of the NVLT Group have shown their willingness to represent the Class by signing sworn Certifications detailing their investments in Novelos common stock during the Class Period and confirming their willingness to discharge the obligations of class representatives in this Action. *See* Trepetin Decl., Exhibit A. Additionally, each member of the NVLT Group has signed a Declaration (*see* Trepetin Decl., Exhibit C) demonstrating that they intend to consult with counsel on a regular basis and direct their counsel and the course of the litigation.

Small cohesive groups like the NVLT Group have routinely been appointed as Lead Plaintiff in securities class actions, when they have shown the Court their ability to effectively

6

manage the litigation. *Schulman v. Lumenis, Ltd.*, 02-1989, 2003 U.S. Dist. LEXIS 10348, at *21-22 (S.D.N.Y. June 18, 2003); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001); *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 00-MD-1335, 2000 U.S. Dist. LEXIS 13390, at *16 (D.N.H. Aug. 17, 2000) (appointing three lead plaintiffs and noting that "while a group comprised of many small shareholders might be unwieldy and lack the proper incentive to serve as an effective lead plaintiff . . . a group that consists of a small number of large shareholders should be capable of managing this litigation and providing direction to class counsel."); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 44-46 (S.D.N.Y. 1998) (allowing three lead plaintiffs and holding that "the plain language of the PSLRA expressly contemplates the appointment of more than one lead plaintiff"); *Greebel*, 939 F. Supp. at 64-65 (finding three plaintiffs to have met the statutory requirements to be appointed lead plaintiff). As one court has succinctly explained regarding an appropriate "group" under the PSLRA:

> This Court does not find it appropriate to limit aggregation when the PSLRA specifically allows for a group of persons to serve as lead plaintiff. There is no requirement contained in the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves. Instead, the PSLRA focuses on whether the person or group that is the proposed lead plaintiff can fairly and adequately serve as the lead plaintiff. Following the PSLRA, this Court focuses not on the composition of the [] group, but rather on whether the group is adequate to serve as lead plaintiff.

*Newman v. Eagle Building Tech.,* 209 F.R.D. 499, 503 (S.D. Fla. 2002). Thus, to determine whether a putative "group" meets the definition of a "group" under the PSLRA, the court's "singular focus will be whether the asserted group has demonstrated the ability to effectively manage the litigation in the interests of the class and direct the litigation without undue influence of counsel." *In re Versata, Inc. Sec. Litig.*, No. 01-1439, 2001 U.S. Dist. LEXIS 24270, at *21-

7

22 (N.D. Cal. Aug. 20, 2001). Therefore, the NVLT Group should be appointed Lead Plaintiff in this Action.

In addition, the NVLT Group has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm resumes of proposed Lead Counsel, Brower Piven, and proposed Liaison Counsel, Berman DeValerio, are attached as Exhibits E and F, respectively, to the Trepetin Declaration.

### 2. The NVLT Group Has the Largest Financial Interest

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001). As demonstrated herein, the NVLT Group, with losses of approximately $99,598.18, has the largest known financial interest in the relief sought by the Class. *See* Trepetin Decl., Exhibit B.

### 3. The NVLT Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in

deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See State Univ. Ret. Sys. v. Sonus Networks, Inc.*, No. 06-10040, 2006 U.S. Dist. LEXIS 93328, at *6-7 (D. Mass. Dec. 27, 2006) (holding that typicality and adequacy are the only relevant prerequisites to Lead Plaintiff selection under the PSLRA); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (citation omitted).

As detailed below, the NVLT Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The NVLT Group's claims are typical of those of other Class members and it can adequately serve as Lead Plaintiff.

### i. The NVLT Group's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *In re Lernout*, 138 F. Supp. 2d at 46. The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See In re Organogenesis Sec. Litig*, 241 F.R.D. 397, 400-01 (D. Mass. 2007).

9

In this case, the typicality requirement is met because the claims of the NVLT Group's numbers are identical to, and non-competing and non-conflicting with the claims of the other Class members. The NVLT Group purchased Novelos stock during the Class Period when the stock prices were artificially inflated as a result of Defendants' misrepresentations and omissions, and thus, both the NVLT Group's members and the Class members suffered damages as a result of these purchases. Therefore, the NVLT Group's members' claims and injuries arise from the same conduct from which the other class members' claims and injuries arise. *See In re Organogenesis*, 241 F.R.D. at 400-01. The NVLT Group is not subject to any unique or special defenses. Thus, the NVLT Group meets the typicality requirement of Rule 23 because its claims are the same as the claims of the other Class members.

### ii. The NVLT Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B).

The NVLT Group's interest is clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between the members of the NVLT Group and the other Class members, but the members of the NVLT Group have a significant, compelling interest in prosecuting this Action to a successful conclusion based upon the very large financial loss of approximately $99,598.18 that they have suffered as a result of the wrongful conduct alleged in this Action. This motivation, combined with the NVLT Group's members' identical interests with the members of the Class, demonstrates that the NVLT Group will vigorously

pursue the interests of the Class. In addition, the NVLT Group has selected law firms to represent it and the Class that are highly experienced in prosecuting securities class actions.

In sum, because of the NVLT Group's common interests with the Class members, its clear motivation and ability to vigorously pursue this Action, and its competent counsel, the NVLT Group meets the adequacy requirement of Rule 23. Since the NVLT Group meets both the typicality and adequacy requirements of Rule 23, and has sustained the largest amount of losses from Defendants' alleged wrongdoing, the NVLT Group is the presumptive Lead Plaintiff in accordance with 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), and it should be appointed as such to lead this Action.

## II. THE COURT SHOULD APPROVE THE NVLT GROUP'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

The NVLT Group has selected Brower Piven and Berman DeValerio to serve as Lead Counsel and Liaison Counsel, respectfully, for the Class. The firms have not only prosecuted complex securities fraud actions, but have also successfully prosecuted many other types of complex class actions as lead and/or class counsel. *See* Trepetin Decl., Exhibits E and F. This Court may be assured that in the event the NVLT Group's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## **CONCLUSION**

For all of the foregoing reasons, the NVLT Group respectfully requests that this Court enter an order (1) appointing the NVLT Group to serve as Lead Plaintiff in this Action; (2)

approving the NVLT Group's selection of Lead Counsel and Liaison Counsel for the Class; and

(3) granting such other and further relief as the Court may deem just and proper.

Dated: May 4, 2010                                    Respectfully submitted,

**BERMAN DEVALERIO**

/s/ Jeffrey C. Block
Jeffrey C. Block (BBO 600747)
One Liberty Square
Boston, Massachusetts  02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

*Proposed Liaison Counsel for the Class*

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

**BROWER PIVEN**
  A Professional Corporation
Charles J. Piven
Yelena Trepetin
1925 Old Valley Road
Stevenson, Maryland 21153
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

*Counsel for the NVLT Investor Group and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I, Jeffrey C. Block, hereby certify that the Memorandum In Support Of The Motion Of The NVLT Investor Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice of Counsel filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 4, 2010.

      /s/ Jeffrey C. Block
      Jeffrey C. Block (BBO 600747)