United States District Court
District of Massachusetts

```
_____
                                 )
BORIS URMAN and RAMONA MCDONALD, )
individually and on behalf of    )
all others similarly situated,   )
         Plaintiffs,             )      Civil Action No.
                                 )      10-10394-NMG
         v.                      )
                                 )
NOVELOS THERAPEUTICS, INC. and   )
HARRY S. PALMIN,                 )
         Defendants.             )
_____)
```

## MEMORANDUM & ORDER

GORTON, J.

This is a putative federal securities class action brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act") on behalf of individuals who purchased or otherwise acquired the common stock of Novelos Therapeutics, Inc. ("Novelos") between December 14, 2009, and February 24, 2010 ("the Class Period"). Before the Court is defendants' motion to dismiss the Amended Complaint.

## I.   Factual Background

Novelos is a biopharmaceutical company incorporated in Delaware with its principal place of business in Massachusetts. Harry S. Palmin ("Palmin") is the Chief Executive Officer, President, and a director of Novelos.  The company commercializes oxidized glutathione-based compounds for the treatment of cancer

and hepatitis.

### A.   The Development of NOV-002

During the Class Period, Novelos sought approval from the Food and Drug Administration ("FDA") of a small molecule compound called NOV-002 as a treatment for advanced non-small cell lung cancer ("NSCLC").  The proprietary formulation of oxidized glutathione used in NOV-002 was first developed in Russia by a pharmaceutical company named Valere in Aliquo Malum ("VAM") which marketed its product under the trade name "Glutoxim".  Glutoxim was approved by the Russian Federation Ministry of Health for use as a cancer treatment drug.

In late 1999, after receiving FDA approval of its Investigational New Drug ("IND") application, Novelos sponsored a Phase ½ clinical trial for NOV-002.  Meanwhile, in June, 2000, Novelos entered into the first of several agreements with VAM by which it obtained the rights to develop and market Glutoxim (redesignated as NOV-002) worldwide, excluding the Russian Federation and the Commonwealth of Independent States.  The Phase ½ trial was completed with positive results in August, 2005, at which time Novelos filed an IND Informational Amendment identifying a change in the color specification for NOV-002.  Plaintiffs contend that, as a result, the NOV-002 subsequently used by Novelos was materially different from the Glutoxim and NOV-002 tested in the Phase ½ clinical trial.

Following the completion of the Phase ½ clinical trial,
Novelos sought and received approval for a Phase 3 clinical
trial, which began patient enrollment in November, 2006, and
reached its enrollment target of 840 patients in March, 2008.  By
design, the Phase 3 trial was randomized, controlled and open-
label.  The trial employed two groups, or "arms", of patients:
patients in the experimental arm received NOV-002 in addition to
a standardized course of carboplatin-paclitaxel chemotherapy,
while patients in the control arm only received the chemotherapy
treatment.

The primary efficacy endpoint, i.e. the requirement for
success, of the Phase 3 trial was to demonstrate a 25%
improvement in median overall survival time, i.e. from 10 months
to 12.5 months.  The Phase 3 trial would conclude, i.e. be
"unblinded", once 725 of the enrolled patients had died.  In its
2007 SEC Form 10-KSB, Novelos reported that it expected the trial
to reach the 725-death point in mid-2009.  No interim analysis
was to be (or was in fact) performed.

### B.    The Alleged Misleading Statements

On December 14, 2009, i.e. at the beginning of the Class
Period, the online publication BioMedReports issued a "Trade
Alert" for Novelos declaring "Pivotal Phase III Drug Trial
Patients Are Living Longer Than Expected."  The following day,
BioMedReports issued a press release which quoted from an

interview conducted with Palmin:

> It's a 900 patient trial that was expected to read out some
> time during the middle of this year, but the patients are
> living longer than expected. [] In fact, we are now
> expecting conclusion of the trial early in 2010.

Plaintiffs allege that Palmin's statement is materially false and
misleading because it indicates that the patients who received
NOV-002 (i.e. the experimental arm) were surviving longer than
anticipated, suggesting that the Phase 3 trial was more
successful than expected.  It later became clear that, in fact,
the unanticipated length of the trial related to the survival
times for patients who did not receive NOV-002 (i.e. the control
arm).

The next day, BioMedReports published additional portions of
the interview with Palmin in which he stated:

> The point that I'm trying to make is that given our current
> statistical projections, because our trial is going late, if
> we assume that the control group does in fact what it's
> supposed to, around a ten month median survival, and there's
> historical data on some four-thousand patients with advanced
> stage lung cancer that have taken our type of chemotherapy
> (paclitaxel/carboplatin [standard of care in the U.S.]),
> then we should be on track to achieve or possibly even
> exceed our possible twelve and a half month median survival
> target.

In that same report, BioMedReports recited further statements
made by Palmin with respect to the positive results of the trials
conducted in Russia.  In an article published later that month by
MarketWatch but apparently based on the same interview conducted
by BioMedReports, Palmin is quoted as stating: "In the words of

big pharma, 'if this Phase III trial is positive, this will be revolutionary for the cancer field.'"  Plaintiffs contend that such statements are materially false and misleading because Novelos modified the NOV-002 such that the drug being tested in the Phase 3 trial differed throughout that trial and from the Glutoxim and NOV-002 used in the Phase ½ clinical trial.

On February 24, 2010, i.e. at the end of the Class Period, Novelos issued a press release reporting that the primary endpoint of improvement in overall median survival had not been met in the NOV-002 Phase 3 trial and quoting Palmin:

> We were hopeful of a positive outcome based on our statistical model simulations and stated assumptions.  In retrospect, it appears our simulations were inaccurate due to trial data deviating from our statistical model, the impact of censoring patterns, and control arm survival exceeding our expectations based on historical precedents.

The common stock of Novelos declined over 80% from a close of $1.65 per share on February 23, 2010, to a close of $0.32 per share on February 24, 2010.

C.   **Post-Class Period Events**

After the instant action had already commenced, VAM obtained and tested samples of the NOV-002 used in the Phase 3 clinical trial and determined that the chemical structure of the NOV-002 tested in the Phase 3 trial was materially different from the Glutoxim and NOV-002 used in the Phase ½ trial.  As a result, VAM and Novelos engaged in numerous communications and eventually litigation to determine whether Novelos violated its agreements

with VAM.

## II.  **Procedural History**

On March 5, 2010, Drew Weaver ("Weaver"), individually and on behalf of all others similarly situated, filed a complaint alleging 1) with respect to both defendants, a claim under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 and 2) with respect to defendant Palmin, a claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

In October, 2010, pursuant to the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court appointed Boris Urman ("Urman") and Ramona McDonald ("McDonald") as lead plaintiffs.  Shortly thereafter, plaintiffs filed an Amended Complaint amplifying the factual pleadings in support of the alleged violations of the federal securities laws.

Plaintiffs allege that defendants made statements and omissions that were materially false and misleading because they failed to disclose that: 1) Palmin lacked any reasonable basis for his statement that patients in the Phase 3 trial were living longer than expected, 2) Novelos modified the manufacturing process and chemical structure of the NOV-002 used in the Phase 3 trial such that it was materially different from that used in Glutoxim and the Phase ½ clinical trial, 3) the positive results

-6-

previously achieved in the Russian studies and Phase ½ clinical trial were not statements about the historical performance or past success of the drug tested in the Phase 3 trial because its chemical structure materially differed.

In December, 2010, defendants moved to dismiss the Amended Complaint for failure to state a claim which plaintiffs opposed. Defendants' motion to dismiss is pending before the Court.

III. **Analysis**

A. **Legal Standard**

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to

dismiss the complaint must be denied.  See Nollet, 83 F. Supp. 2d at 208.

A claim for securities fraud must also comply with Fed. R. Civ. P. 9(b) and satisfy the exacting requirements of the PSLRA. See Fed. R. Civ. P. 9(b) (allegations of fraud must be stated with particularity); 15 U.S.C. § 78u-4(b)(2) (complaint must "state with particularity facts giving rise to a strong inference" of scienter); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007) (noting the "[e]xacting pleading requirements" of the PSLRA).

**B.   Section 10(b) and Rule 10b-5 Liability**

Plaintiffs allege that both defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5.  Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security...any manipulative device or contrivance."  15 U.S.C. § 78j(b).  Rule 10b-5 similarly makes it unlawful:

> To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading...

17 C.F.R. § 240.10b-5(b).  To state a claim under Section 10(b) and Rule 10b-5 a plaintiff must adequately plead six elements:

> (1) a material misrepresentation or omission; (2) scienter, or a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.

-8-

Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1317-18 (2011); see also ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008) (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005)).

Plaintiffs have compiled a laundry list of statements made by defendant Palmin that are allegedly false because, in essence, they either suggested patients receiving NOV-002 were living longer than expected or compared the Phase 3 trial to prior studies despite purported changes in the drug manufacturing process. Defendants contend that statements falling within the first category are not false as a matter of logic and those within the second category were not made with the required scienter. Because the statements are closely related and may be grouped together for consideration without diminishing the individualized attention needed to be given to each, the Court considers each category of statements in turn. See In re Parametric Tech. Corp. Sec. Litig., 300 F. Supp. 2d 206, 213 (D. Mass. 2001).

In addition to the documents attached to the Second Amended Complaint, the Court properly considers the IND Informational Amendment and the several news and analyst reports separately submitted. See, e.g., Garvey v. Arkoosh, 354 F. Supp. 2d 73, 79 (D. Mass. 2005).

### 1.   Misrepresentation

With respect to statements made by defendant Palmin that "patients are living longer than expected", the statements fail to satisfy the element of material misrepresentation.  The subject statement itself is not false but plaintiffs argue it is misleading because it suggests that the patients who received NOV-002 were surviving longer than expected.  Indeed, a statement that is literally accurate may, through context and presentation, become misleading.  See Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 175 (1st Cir. 1994) (citation omitted).  Here, however, it is not clear that the statement alone is misleading but even if it might be, Palmin also stated:

> given our current statistical projections, because our trial is going late, if we assume that the control group does in fact what it's supposed to, around a ten month median survival, and there's historical data on some four-thousand patients with advanced stage lung cancer that have taken our type of chemotherapy (paclitaxel/carboplatin [standard of care in the U.S.]), then we should be on track to achieve or possibly even exceed our possible twelve and a half month median survival target.

(this Court's emphasis).  By thus including his assumption regarding the control arm, Palmin's first statement and the implication that those patients are in the experimental arm are not misleading.  Indeed, the implication follows as a matter of logic.

Plaintiffs do not (and cannot) contend that the two statements, made during the course of a single interview, are

misleading when taken together.  Plaintiffs argue, however, that
because only the first statement appeared in the BioMedReports
article published December 15, 2009, that statement is actionably
false.

A statement "is misleading if a reasonable investor, in the
exercise of due care, would have received a false impression from
the statement."  In re Par Pharm., Inc. Sec. Litig., 733 F. Supp.
668, 677 (S.D.N.Y. 1990).  Here, the record is clear that 1) the
December 15, 2009 article containing the first statement also
stated that the "full interview with the CEO of the company will
appear on the news portal tomorrow", 2) an article published the
following day did, in fact, contain both statements and 3) Palmin
made both statements during one interview.  In the situation thus
presented, a reasonable investor who read the December 15, 2009
article would, in the exercise of due care, also have read the
article published the following day.  Because it is clear that
the December 15, 2009 article did not contain the "full
interview" and the second article contained both statements, the
first statement is not misleading.

### 2.   Scienter

With respect to statements made by defendant Palmin
comparing the Phase 3 trial to prior studies despite purported
changes in the drug manufacturing process, the statements fail to
meet the scienter requirement.

"Scienter is 'a mental state embracing intent to deceive, manipulate, or defraud.'"  ACA, 512 F.3d at 58 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)).  It requires a showing that the defendant acted with "either conscious intent to defraud or a high degree of recklessness."  Id. (internal quotation marks omitted).  Under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind."  15 U.S.C. § 78u-4(b)(2).  The Supreme Court has instructed that, to qualify as strong,

> an inference of scienter must be more than merely plausible
> or reasonable — it must be cogent and at least as
> compelling as any opposing inference of nonfraudulent
> intent.

Tellabs, 551 U.S. at 314.  In making the scienter determination, the Court must evaluate "the totality of the circumstances." Brumbaugh v. Wave Sys. Corp., 416 F. Supp. 2d 239, 252-53 (D. Mass. 2006).

"Knowingly omitting material information is probative, although not determinative, of scienter."  Miss. Pub. Employees' Ret. Sys. v. Boston Scientific Corp., 523 F.3d 75, 87 (1st Cir. 2008).  "[G]eneral inferences that the defendants, by virtue of their position within the company, 'must have known' about the company's problems" are insufficient.  See Lirette v. Shiva Corp., 27 F. Supp. 2d 268, 283 (D. Mass. 1998) (citing Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir. 1998)).  As another session

-12-

of this court has explained:

> A 10b-5 plaintiff must allege details of defendants'
> alleged fraudulent involvement, including specifics as
> to what defendants had knowledge of and when.  To
> satisfy this requirement, complaints typically identify
> internal reports, memoranda, or the like, and allege
> both the contents of those documents and defendants'
> possession of them at the relevant time.

In re Boston Tech., Inc. Sec. Litig., 8 F. Supp. 2d 43, 57 & n.17
(D. Mass. 1998) (citations and internal quotation marks omitted)
(noting that allegations of a meeting at which relevant subject
matter was discussed could suffice to prove knowledge).  Nor are
"general allusions to unspecified internal corporate information"
or documents sufficient to show scienter.  Lirette, 27 F. Supp.
2d at 283; see also Carney v. Cambridge Tech. Partners, Inc., 135
F. Supp. 2d 235, 255 (D. Mass. 2001).

Plaintiffs make numerous (and repetitive) allegations
regarding the element of scienter.  First, plaintiffs allege that
defendants knew changes to the manufacturing process for NOV-002
had been made because they had control over and/or receipt of
information concerning those changes.  In addition, plaintiffs
contend that defendant Palmin 1) by virtue of being the son of
Simyon Palmin (who founded the company and executed agreements
with VAM), was "therefore, privy to the details concerning the
manufacturing process and quality assurance specifications" for
Glutoxim and NOV-002, 2) knew or recklessly disregarded that the
manufacturing specifications for NOV-002 differed from Glutoxim

based on a color change and that the color change indicated a difference in chemical structure between the compounds and 3) was motivated to make false statements in order to generate financial interest in the company.

Taken collectively, these allegations fail to meet the scienter requirement.  A general inference that defendant Palmin, by virtue of his position within the company or his familial relationship to the company's founder or as one of eight employees, must have known about the manufacturing details is insufficient.  See Lirette, 27 F. Supp. 2d at 283.  Nor is a general allegation that Palmin had a motive "to generate interest" in the company sufficient.  With respect to the studies conducted by VAM (or by a third party at its request) regarding the effectiveness of NOV-002, post-class period events and statements are irrelevant to the scienter determination and consideration thereof would be "equivalent to the classic fraud by hindsight case".  See La. School Emp. Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 484-85 (6th Cir. 2010) (citation and internal quotation marks omitted).

Plaintiffs urge this Court to find that Palmin knew or recklessly disregarded that the formulation of the drug used in the Phase 3 trial differed from the earlier Russian studies and Phase ½ trial.  The IND Amendment which was filed with and accepted by the FDA gives rise to the competing and more

-14-

persuasive non-fraudulent inference that defendant Palmin understood the change to affect only the color specification, rather than the effectiveness or fundamental composition of the drug.

### C.   Section 20(a) Liability

Plaintiffs assert a claim for control person liability pursuant to Section 20(a) of the Exchange Act against the individual defendant Palmin.  Section 20(a) imposes joint and several liability on any person who "directly or indirectly controls any person liable" under Section 10(b) and Rule 10b-5. 15 U.S.C. § 78t(a).  Because the Amended Complaint fails to allege an underlying violation of the federal securities laws, plaintiffs' Section 20(a) claim must also be dismissed.  See Greebel, 194 F.3d 207.

### D.   Dismissal Without Prejudice

The First Circuit Court of Appeals has held that the PSLRA "does [not] require that all dismissals be with prejudice."  ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 56 (1st Cir. 2008).  Here, although the Court's findings do not rest entirely on pleading deficiencies, it will dismiss the case without prejudice, in an abundance of caution, and allow plaintiffs leave to amend once more.  See Isham v. Perini Corp., 665 F. Supp. 2d 28, 41-42 (D. Mass. 2009); Guerra v. Teradyne Inc., No. 01-cv-11789, 2004 WL 1467065, at *28 (D. Mass. Jan. 16, 2004) (allowing

leave to amend where it "was the first time a complaint has been substantially reviewed by the court in th[e] case").  The Court, however, makes this ruling with the caveat that if the second amended complaint is deficient, dismissal will then be with prejudice.  <u>See</u> <u>Suna</u> v. <u>Bailey Corp.</u>, 107 F.3d 64, 66 (1st Cir. 1997) (affirming dismissal after the district court "'reluctantly grant[ed] plaintiffs leave to file a second amended complaint' ... but cautioned that if 'the second complaint fail[ed] to satisfy the pleading requirements, the action [would] then be dismissed with prejudice'").

**ORDER**

In accordance with the foregoing, defendants' motion to dismiss the Amended Class Action Complaint (Docket No. 27) is **ALLOWED** and the case is **DISMISSED without prejudice.**


**So ordered.**

/s/ Nathaniel M. Gorton<br>Nathaniel M. Gorton<br>United States District Judge

Dated June 23, 2011

-16-